UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAVONNE GREEN,

          Plaintiff,                        Case No. 2:23-cv-11005

v.                                        Honorable Susan K. DeClercq
                                             United States District Judge

ROCKET MORTGAGE LLC,

          Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (ECF No. 10)**

Beginning in 2012, Plaintiff Shavonne Green worked for Defendant Rocket Mortgage at its office in Detroit, Michigan. But in March 2020, the COVID-19 pandemic arrived. In response to the pandemic, Rocket—like many corporate workplaces—required its employees to work from home to reduce the spread of the virus. By 2021, the threat of the virus had significantly decreased, and Rocket required its employees to return to the office. But Green sought an accommodation from Rocket's return-to-office mandate, asserting that she had developed "pandemic-related stress," which caused her to feel depressed and anxious.

At first, Rocket granted Green some accommodations, but it required Green to submit updated medical forms documenting the necessity and parameters of her requested accommodations moving forward. Rocket and Green corresponded for

months, and still Green did not provide the required information to Rocket. So, in 2022, Rocket fired Green.

Green now has sued Rocket, alleging that by making her return to work in person, it failed to accommodate her disability and discriminated against her under the Americans with Disabilities Act (ADA). But because the undisputed evidence shows that Green abandoned the interactive process in seeking her accommodation, summary judgment is appropriate, and the complaint will be dismissed.

## I. BACKGROUND

In 2012, Green began working for Rocket Mortgage as a document analyst, eventually rising to an executive document specialist position. *See* ECF Nos. 10-2 at PageID.83, 85-86, 88; 10-6 at PageID.127; 11-2 at PageID.229–230. Each position Green held with Rocket required her to work full-time from Rocket's office, Monday through Friday, although there was a brief period in 2018 during which Green was allowed to work from home. *See* ECF Nos. 10-2 at PageID.83–84, 86–89, 90–91; 10-7 at PageID.131–32.

Starting in March 2020, Rocket Mortgage required employees to work remotely because of the COVID-19 pandemic, and that remote work mandate continued through most of 2021. ECF No. 10-2 at PageID.98. But in the Fall of 2021, Rocket began calling its employees back into the office, requiring at least two in-person days per week. ECF Nos. 10 at PageID.56; 11 at PageID.209.

Around the time that Rocket required employees to return to the office, Green began seeking accommodations for her physical and mental impairments, which included anxiety, depression, chronic back pain, and sciatica pain. *See* ECF No. 11-3 at PageID.239.

### A. August–October 2021 (First Request[1])

On August 19, 2021, Green submitted an accommodation request, which sought to reduce the number of hours she worked per day.[2] She reached out to Miriam Ankouni, a Rocket Mortgage human resources specialist, with a note from her physician, Dr. Samar Chamas, which stated that Green should limit her work hours to five hours per day, from 7:00 AM to 12:00 PM. ECF No. 10-8 at PageID.135. The note made no reference to remote work.[3] *Id.* Further, the note did not explain the reason for the accommodation. *Id.* Nevertheless, Ankouni responded later that day, authorizing a temporary reduction to five hours per day until mid-September, clarifying that Rocket would "request updated documentation" if

---

[1] The designations of "first," "second," and "third" requests are merely used to chronologically identify the sets of documents Green provided to Rocket. For all other purposes, this Court views these to be sub-parts of *one* ongoing interactive process regarding a single accommodation request for remote work.

[2] Although Green initially sought a reduced hours accommodation, her suit is solely focused on the failure to accommodate her later request to work remotely. ECF No. 11 at PageID.207; *see also* Part III, *infra*.

[3] In her later-discovered visit notes, Dr. Chamas also stated that Green would be required to return to the office in September, but that Green did not want to return because she "does not want to get vaccinated." ECF No. 10-9 at PageID.137.

- 3 -

Green's accommodation "need[ed] to be extended" past then. ECF No. 10-10 at PageID.143.

When mid-September rolled around, Green submitted another accommodation request, for the first time adding an ask for remote work. Specifically, Green asked to "continue to work from home during the time [she is] on a 5-hour work day restriction." ECF No. 10-11 at PageID.146. In response, Ankouni sent Green an ADA packet—a set of forms explaining a disability and suggesting possible accommodations—and instructed her to have her doctor fill it out. *Id.* Ankouni specified that Green's doctor's explanations should not be vague, asking her to "please ensure [her] physician provides details into the *why* behind the requests." *Id.* (emphasis added)

One week later, Green and her internal medicine doctor, Dr. Prizzy Job, completed the ADA packet. ECF No. 10-12. The packet included two forms: one to be filled out by Green and the other by her doctor. *Id.* On her portion, Green suggested that she receive accommodations of both reduced work hours and remote work. *Id.* at PageID.148. However, Dr. Job recommended only reduced hours for a temporary period of six months—saying nothing about remote work. *Id.* at PageID.152–53. Green submitted the packet to Ankouni on September 20, 2021. ECF No. 11-6.

Green and Dr. Job also completed a separate FMLA application packet, again only recommending a reduction to five hours per day. ECF No. 10-15. On October 4, 2021, Rocket Mortgage approved Green for FMLA intermittent leave for a six-month period to allow Green to work shorter days when her conditions flared up and take time off for physical therapy appointments, consistent with Dr. Job's recommendations in the ADA and FMLA packets. ECF Nos. 10-14 at PageID.159; 10-2 at PageID.102; 10-15 at PageID.163–64.

About one week later, Green emailed Ankouni to check in on her ADA accommodation request, ECF No. 11-8, attaching a new doctor's note from Dr. Chamas—not Dr. Job, the physician who filled out the accommodation packets—which simply stated:

> Shavonne Green was seen in my clinic on 8/17/2021. She can only work from home from 7:00 a.m. to 12:00 p.m. at this time.

ECF No. 11-7 at PageID.250. In an email the next day,[4] Green asked Ankouni to clarify what she [Green] was required to do:

> Per our conversation yesterday, can you give me in detail[] what exactly you would like me to have my Doctor explain what you are asking/ need from me and also explain details about the FMLA that wasn't clear to you. I want to make sure I have a clear understanding of what you need from me.

---

[4] Because Green's email references a "conversation yesterday," it is reasonable to infer that Green and Ankouni spoke—either on the phone or in emails not included in the exhibits—in response to Green's email checking in on the status of her ADA request. *See* ECF No. 11-8.

ECF No. 11-8 at PageID.252. Three hours later, Ankouni responded, stating that Rocket could not accommodate the request for a reduced, fully remote workday. ECF No. 11-9 at PageID.254. The next day, Green responded, noting, "I spoke with you a couple days ago you asked me for more information regarding my disability condition and wanted to know 'Why behind it' as if the information I given you about my condition wasn't enough." *Id.* Green then asked for next steps, noting that she had been trying her best to provide enough information to support her request. *Id.*

That same day, Ankouni explained why Rocket denied Green's requests for reduced hours and for remote work. ECF No. 11-10 at PageID.256. As to reduced hours, Ankouni stated that Rocket could not accommodate a shorter workday for six months, suggesting that Green should consider alternative solutions like taking a leave of absence or using her approved FMLA leave to end her days earlier when needed. *Id.* As to remote work, Ankouni stated that Green had not given Rocket enough information to justify working from home:

> The information that was provided in the accommodation [packet] does not state any information about working from home, which we discussed. The only information about working from home was in the doctors note you provided yesterday that did not state the "why" behind you needing to work from home. It only stated that you need to work from home.

*Id.* Finally, Ankouni clarified that Green's request for reduced hours had been approved through the end of the month.[5] *Id.* The purpose was to give Green enough time to work with her doctor to find alternative solutions and to clear up any confusion about completing the necessary paperwork. *Id.* When Green replied that she would reach out to her doctor for a better articulation of why she needed to work from home, Ankouni responded, "Thank you for the update. I will wait for the updated information [from] your doctor after you reach out to them." ECF No. 11-11 at PageID.258.

After the first request, Rocket had the following documentation from Green:

1. A note from Dr. Chamas stating that Green should limit her working hours to five hours per day;
2. ADA and FMLA accommodations packets completed by Dr. Job recommending a limit on Green's hours to five hours per day for 6 months (saying nothing about remote work despite Green requesting it in her portion of the ADA packet);
3. A note from Dr. Chamas stating that Green "can only work from home" for five hours per day.

ECF Nos. 10-8 at PageID.135; 10-12 at PageID.148, 152–153; 11-7 at PageID.250.

### B. October – November 2021 (Second Request)

About two weeks later, at the end of October 2021, Green reached out to Ankouni again, asking to work remotely and attaching a letter, this time from her

---

[5] Presumably, Ankouni meant that Green could work a reduced schedule for the rest of the month *without* using her approved FMLA time.

therapist. ECF No. 11-13 at PageID.262. The therapist's letter was slightly more specific than the letters previously submitted by Dr. Chamas:

> It is my medical opinion that Shavonne Green should remain out of the office and work remotely due to mental health condition. She has the following diagnosis related to pandemic stress for anxiety and depression[.]

ECF No. 11-12 at PageID.260. Ankouni was out of the office at the time, so another human resources associate responded, attaching an accommodation packet for Green to fill out. ECF No. 11-14 at PageID.264–65. Green replied that she had already filled out an accommodation packet in September. *Id.* at PageID.266. The associate, who had not been involved with the first request, asked Green what happened when she submitted the packet. *Id.* Apologizing for sending it again, the associate explained that she sent over a blank packet because Rocket was not granting work from home requests based on doctor's notes. *Id.* When Green responded, confused, that she provided a letter because she had been told her packet did not articulate "why" she needed to work from home, *Id.* at PageID.267, the associate clarified that a doctor's note was just not enough *on its own*:

> The ADA packet that I sent over has very specific questions regarding the accommodation to help [us] employers do what we can to support you, that is why we follow that process for any accommodation due to a medical condition.

*Id.* at PageID.268. Green then noted that the accommodation packet she completed explained her disabilities, but her accommodation was still denied, so she got an additional letter to further explain her mental disability. *Id.* at 269.

When Ankouni returned the next week, she asked Green if she was given an updated accommodations packet for her doctor to complete, reiterating that Rocket needed "an explanation of how your disability affects your ability to come into the office." ECF No. 11-15 at PageID.271. Green never responded—to the email, or to the request for additional information—and instead returned to work in person. ECF Nos. 10 at PageID.61; 10-1 at PageID.103; 11 at PageID.213; 11-2 at PageID.233.

After the second request, Rocket had the following documentation from Green:

1. A note from Dr. Chamas stating that Green should limit her working hours to five hours per day;
2. ADA and FMLA accommodations packets completed by Dr. Job recommending a limit on Green's hours to five hours per day for 6 months (saying nothing about remote work despite Green requesting it in her portion of the ADA packet);
3. A note from Dr. Chamas stating that Green "can only work from home" for five hours per day;
4. A letter from October 2021 by her therapist recommending that Green work remotely due to anxiety and depression.

ECF Nos. 10-8 at PageID.135; 10-12 at PageID.152–53; 11-7 at PageID.250; 11-12 at PageID.260.

### C. April – July 2022 (Third Request)

Four months later, on April 22, 2022, Green again reached out to Ankouni stating that under her therapist's recommendation, she "*will* be working remotely" starting the next week "because [she is] unable to work in the office due to mental health condition." ECF No. 11-16 at PageID.273 (emphasis added). Green attached a letter from her therapist stating that, in her medical opinion, "Shavonne Green should remain out of the office and work remotely due to mental health condition. She has the following diagnosis for anxiety and depression." ECF No. 11-17 at PageID.275.

That same day, Ankouni responded that Green needed to submit an updated accommodation packet and "go through the accommodation process" before Rocket could proceed with the remote work request. ECF No. 11-18 at PageID.278. Ankouni emphasized that Green needed to either report in person until a decision was made on the accommodation or take off the days she was expected in the office. *Id.* In response, Green simply wrote, "The accommodation packet you are requesting from my Doctor, you've received." *Id.* She then attached the packet from September that recommended accommodations only until March—which had already come and gone. *Id.*; *see* ECF No. 10-12 at PageID.152. When Ankouni asked whether the packet was the same packet originally submitted in September or an updated packet, Green replied, "This is the same packet. You requested an accommodation packet

from my doctor [ ] which she has already filled out. If you have any questions please feel free to give her a call." ECF No. 11-18 at PageID.279.

A few weeks later, Ankouni reached back out to Green, informing her of the problems with her simply resubmitting the old accommodations packet rather than providing an updated one:

> During our phone call it was stated that I will begin the accommodation reviewal process with the documents that were sent over to me. If you remember, I did let you know that there was a chance the documentation may be declined again due to it being the same documentation that was provided last year and was declined at that time. . . . I received confirmation on Friday that we cannot move forward with the current accommodation packet that was sent over due to the packet being completed over 6 months ago. . . . For next steps, we will need your doctor to complete updated documentation. I know you sent over a doctors note, but a doctors note is not sufficient for an accommodation process. I will fax over the forms today to your doctor, can you please confirm for me the fax number and your doctors name?

ECF No. 11-19. Green did not respond. ECF No. 10-21 at PageID.188–89. So, after a month of hearing nothing from Green, Ankouni wrote to Green, claiming that Green refused to participate in the interactive process, but that Rocket would give her one last chance to submit a proper ADA packet by June 29, 2022. *Id.* Ankouni's letter noted that Rocket would "temporarily allow [Green] to work from home . . . while [she] work[ed] with [her] healthcare provider to provide the updated ADA packet." *Id.* The letter also clarified that the specific information Rocket needed was "what accommodations were currently needed in order for you to be able to perform your essential job functions with or without accommodation, the duration of time

- 11 -

you would need those accommodations, if any, and the extent to which your current condition limits your ability to perform your essential job functions onsite." *Id.*

Six days later, Green responded by emailing Ankouni. ECF No. 10-22 at PageID.191. In her email, Green claimed that the documents she had already provided—that is, the September accommodation packet and her doctors' notes—were enough. *Id.* Regarding the request for an updated packet, Green wrote:

> [T]he accommodation to work remotely is from my psychotherapist and not my medical doctor. I did not give consent to my therapist to explain how my performances are affected working in the office or home. I have allowed my therapist to only disclose[] my diagnosis. This is my confidential right as an employee. The only accommodation is needed is to work remotely.

*Id.*

One week later, on June 5, 2022, Green reached back out to ask if her request had been denied. ECF No. 10-23 at PageID.193. Ankouni responded that Green still had not provided enough information for her request to be considered. *Id.* The next day, Green asked again if the request had been approved or denied. ECF No. 10-24 at PageID.195. Ankouni gave the same response, stating, "Again, I have asked you for this information repeatedly and you have refused to provide on every occasion." *Id.* Green did not respond. ECF No. 10-2 at PageID.108.

After Green's third request, Rocket had the following:

1. A letter from August 2021 by Dr. Chamas recommending that Green work 5 hours per day;

2. ADA and FMLA accommodations packets completed by Dr. Job recommending a limit on Green's hours to five hours per day (until March 2022), with substantive bases for that recommendation;
3. A letter from September 2021 by Dr. Chamas recommending that Green work 5 hours per day from home;
4. A letter from October 2021 by her therapist recommending that Green work remotely due to anxiety and depression;
5. A letter from April 2022 by her therapist recommending that Green work remotely due to anxiety and depression.

ECF Nos. 10-8 at PageID.135; 10-12 at PageID.152–53; 11-7 at PageID.250; 11-12 at PageID.260; 11-17 at PageID.275.

On July 11, 2022, Rocket Mortgage fired Green "due to [her] failure and refusal to provide requested documentation with respect to [her] request to work remotely and [her] attendance occurrences." ECF No. 10-25 at PageID.197.

In April 2023, Green sued, alleging that Rocket failed to accommodate her disability and discriminated against her under the ADA. ECF No. 1. Rocket moved for summary judgment. ECF No. 10. In response, Green agreed to voluntarily dismiss Count II of her complaint, which alleged disability discrimination. ECF No. 11 at PageID.224. As such, only Count I, which alleges failure to accommodate, remains. ECF No. 1 at PageID.5.

## II. STANDARD OF REVIEW

To prevail on summary judgment, movants must identify record evidence showing that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986);

FED. R. CIV. P. 56(a). If the movant does so, then the burden shifts to the nonmovant to identify specific facts that create "a genuine issue for trial," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted), which requires more than a mere "scintilla of evidence," *id.* at 251, and more than "metaphysical doubt," *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. All inferences must be reasonable, logical, and drawn in the nonmovant's favor to determine whether any party must prevail as a matter of law. *See id.* at 251–52.

### III. ANALYSIS

Because Green agreed to voluntarily dismiss her disability discrimination claim, this Court considers only whether summary judgment is appropriate as to Green's reasonable accommodation claim. Further, although Green's complaint seems to argue that her failure-to-accommodate claim includes her request for a reduced work schedule, ECF No. 1 at PageID.5, Green abandoned that argument in her response to the motion for summary judgment, ECF No. 11 at PageID.207 ("In particular, [Rocket] illegally failed to provide [Green] with a reasonable accommodation to work remotely."). *See Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 324 (6th Cir. 2023) (citation omitted) ("When a litigant fails to address a claim in response to a motion for summary judgment, that claim is deemed abandoned or

forfeited."). Therefore, this Court considers only whether the failure to grant a *remote work* accommodation violated the ADA.

## A. Reasonable Accommodation

Under the ADA, employers must make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability. 42 U.S.C. § 12112(a), (b)(5)(A).

The Sixth Circuit has adopted a multi-part test to evaluate reasonable-accommodation claims:

> (1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 811–12 (6th Cir. 2020) (quoting *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007)); *see also Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 417 (6th Cir. 2020) (noting that failure-to-accommodate claims "are analyzed pursuant to the direct test" from *Kleiber* rather than the *McDonnell Douglas* burden-shifting approach).

Here, the Parties dispute the reasonableness of Green's request to work remotely: Rocket argues that in-person work is essential, and Green disagrees. ECF

Nos. 10 at PageID.71; 11 at PageID.218. Rocket further argues that Green's inability to work onsite and meet her productivity goals kept her from being "otherwise qualified" under the ADA. ECF No. 10 at PageID.74. But before considering the reasonableness of the proposed accommodation and Green's qualifications, there is a preliminary question to address: did the Parties engage in the required interactive process to determine Green's limitations and find a suitable accommodation?

## B. Interactive Process

When an employee requests a reasonable accommodation, "it may be necessary for the [employer] to initiate an informal, interactive process with the [employee]." 29 C.F.R. § 1630.2(o)(3). Although the ADA's text does not mention this interactive process, the Sixth Circuit has held that "the interactive process is mandatory." *Kleiber*, 485 F.3d at 871. As part of the interactive process, an employer may request documentation supporting the accommodation. *Tchankpa*, 951 F.3d at 813. That documentation should explain how the employee's disability impairs their ability to perform essential job functions, or at least show that the suggested accommodation relates to their disability. *Id.* at 814. Documentation in support of a reasonable accommodation is sufficient if it:

> "(1) describes the nature, severity, and duration of the employee's impairment, the activity or activities that the impairment limits, and the extent to which the impairment limits the employee's ability to perform the activity or activities; and, (2) substantiates why the requested reasonable accommodation is needed."

U.S. Equal Emp. Opportunity Comm'n, Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees under the ADA (2000). Within the interactive process, an employee seeking a remote work accommodation "must explain what limitations from the disability make it difficult to do the job in the workplace, and how the job could still be performed from the employee's home." U.S. Equal Emp. Opportunity Comm'n, Work at Home/Telework as a Reasonable Accommodation (2003).

The goal of the interactive process is to understand the specific limitations caused by the disability and consider possible accommodations to overcome those limitations. 29 C.F.R. § 1630.2(o)(3). And because both the employer and employee naturally have access to information that the other does not, both must engage in the process in good faith. *Kleiber*, 485 F.3d at 871 (6th Cir. 2007) (citations omitted). When a party fails to participate in good faith and the interactive process breaks down, courts should determine the cause of the breakdown and assign responsibility. *Id.* (quoting *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996). If an employee voluntarily abandons the process—for example, by failing to communicate or provide adequate information—the employer is not liable for failure to accommodate. *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 840 (6th Cir. 2018).

Here, with respect to the interactive process, the Parties do not dispute the facts. They do not dispute the authenticity of each other's evidence or suggest that a jury should decide any questions of credibility. Rather, they disagree on *who* was responsible for any breakdown in the process and the *sufficiency* of the documentation Green provided.

The undisputed email exchanges, depositions, and doctors' notes discussed above show that for months, both parties made concerted good-faith efforts to gather the necessary information through the interactive process. But that same undisputed evidence also shows that the interactive process broke down before an accommodation could be reached. So, this Court must assign blame for the breakdown. *Kleiber*, 485 F.3d at 871.

The assignment of blame here requires resolving two questions: (1) *when* did the breakdown occur; and (2) *who* caused the breakdown.

### 1. First Request

Green argues that Rocket was the first to disengage from the interactive process. ECF No. 11 at PageID.222. She claims that Ankouni ended the process when she denied Green's first remote work request in October 2021, three hours after Green emailed her to ask what additional information was needed. *Id.*; 11-9 at PageID.254. But in context, the subsequent conversations between Green and Ankouni confirm that the interactive process continued well beyond that point. ECF

Nos. 11-9 at PageID.254; 11-10 at PageID.256; 11-11 at PageID.258. Ankouni specifically told Green that Rocket would await further documentation from Green's doctor. ECF No. 11-11 at PageID.258. In this way, Rocket continued seeking additional information from Green, and so there was no breakdown after the first request.

### 2. Second Request

Neither Party argues that the other abandoned the process in November 2021, after Green's second request. That said, the facts support a conclusion that either (1) Green abandoned the process by not responding with more information and returning to work, ECF Nos. 10 at PageID.61; 10-1 at PageID.103; 11 at PageID.213; 11-2 at PageID.233, or (2) she merely paused discussions until resuming them in April, ECF Nos. 11-17; 11-18. Either way, Rocket was not responsible for a breakdown in November 2021, so no liability for failure to accommodate attached at that moment in time.

### 3. Third Request

In the end, Green was the one to abandon the interactive process. That is because when Green made her third request in April 2022, she again asked to work remotely but refused to submit a new accommodation packet from her doctor. ECF Nos. 11-17; 11-18 at PageID.278. The previous packet—which, again, did not recommend working from home—expired by its own terms in March 2022. ECF

No. 10-12 at PageID.152. But Green still insisted on resubmitting it and refused to complete a new one. ECF Nos. 11-18 at PageID.278; 10-22 at PageID.191. And, despite Green's refusals, Rocket was still participating in the interactive process: Ankouni told her she would review the new request, but that the chances of approval were low considering: (1) Green had not provided any new information and (2) her prior request had already been deemed insufficient. ECF No. 11-19 at PageID.281. Green still refused to complete a new packet. *Id.*; *see also* ECF No. 10-21 at PageID.188–89. Accordingly, Green caused the breakdown at that point.

### 4. Sufficiency of Documentation

Green argues that Rocket "cannot escape liability" on the theory that she abandoned the interactive process because (1) "Plaintiff did provide all of the requested information" and (2) "Plaintiff's participation in the interactive process met all of her requirements under the ADA." ECF No. 11 at PageID.221. Put differently, Green contends that Rocket had all the information it needed to grant an accommodation.

The problem with this argument, however, is that Green did *not* provide enough information to Rocket to allow consideration of her requested accommodation. Over a span of more than 10 months with three major periods of back-and-forth, Green only provided five documents in support of her request for remote work:

1. A letter from August 2021 by Dr. Chamas recommending that Green work 5 hours per day;
2. ADA and FMLA accommodations packets completed by Dr. Job in September 2021 recommending a limit on Green's hours to five hours per day (until March 2022) because of her anxiety, depression, chronic pain, and sciatica, with substantive explanations for *that* recommendation;
3. A letter from September 2021 by Dr. Chamas recommending that Green work 5 hours per day from home;
4. A letter from October 2021 by her therapist recommending that Green work remotely due to her anxiety and depression;
5. A letter from April 2022 by her therapist recommending that Green work remotely due to her anxiety and depression.

ECF Nos. 10-8 at PageID.135; 10-12 at PageID.152–53; 11-7 at PageID.250; 11-12 at PageID.260; 11-17 at PageID.275.

Of the above documents, only *three* recommended remote work and only the last two tied the recommendation to a diagnosis (anxiety and depression). ECF Nos. 11-7 at PageID.250; 11-12 at PageID.260; 11-17 at PageID.275. But even in those two notes, Green's therapist never provided an explanation of *why* Green's anxiety and depression hindered her ability to work in person and, relatedly, how working from home would enable her to perform the essential functions of her position. ECF Nos. 11-12 at PageID.260; 11-17 at PageID.275. In fact, only one health provider—Dr. Job—provided *any* explanation of Green's impairments and how they affected her work. ECF No. 10-12. And Dr. Job notably did *not* suggest Green be allowed to work remotely, despite Green requesting such an accommodation on her own portion of her ADA packet. *Id.*

- 21 -

Green's cursory and conflicting documentation—five notes from three providers referencing different, if any, diagnoses and recommending two different accommodations—left Rocket with more questions than answers. Thus, no jury could find that it was unreasonable for Rocket to request more information from Green before granting a remote work accommodation. *See Tchankpa*, 951 F.3d 805, 813 (affirming grant of summary judgment for employer when employee's medical documentation did not explain *why* his disability required work from home); *see also Aldini v. Kroger Co. of Mich.*, 628 F. App'x 347, 351 (6th Cir. 2015); U.S. Equal Emp. Opportunity Comm'n, Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees under the ADA (2000); U.S. Equal Emp. Opportunity Comm'n, Work at Home/Telework as a Reasonable Accommodation (2003).

And despite Green's arguments to the contrary, the undisputed evidence shows that Rocket clearly and repeatedly requested an explanation of *why* Green's disabilities required remote work. ECF Nos. 10-11 at PageID.146 ("please ensure your physician provides details into the why behind the requests); 11-10 at PageID.256 ("The only information about working from home was in the doctors note you provided yesterday that did not state the 'why' behind you needing to work from home."); 11-15 at PageID.271 (asking for "an explanation of how your disability affects your ability to come into the office"); 10-21 at PageID.188–89

(requesting documentation of "the extent to which your current condition limits your ability to perform your essential job functions onsite").

By refusing to submit the requested updated accommodation packet, and by never providing an explanation for why her disability required her to work from home, Green abandoned the interactive process. Because of Green's abandonment, Rocket Mortgage may not be held liable for failing to accommodate her disability. *Brumley*, 909 F.3d at 840. Therefore, Defendant's motion for summary judgment will be granted and Green's reasonable-accommodation claim—and thus her complaint—will be dismissed.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 10, is **GRANTED.**

Further, it is **ORDERED** that the Complaint, ECF No. 1, is **DISMISSED WITH PREJUDICE**.

/s/Susan K. DeClercq
SUSAN K. DeCLERCQ
United States District Judge

Dated:  March 7, 2025

- 23 -